**Price v. A & G Manufacturing Co. Inc.**
*[Cite as 8 AOA 145]*

*Case No. 3-89-27*
*Crawford County, (3rd)*
*Decided December 7, 1990*

*J. Eric Fleischauer, Calhoun, Benzin, Kademenos & Heichel, 6 West Third Street, Mansfield, Ohio 44902, for Appellants.*

*E. Richard Hottenroth, Hottenroth, Garverick & Tilson, 126 South Market Street, P.O. Box 477, Galion, Ohio 44833, for Appellee.*

EVANS, J.

Plaintiff-appellant, Dana E. Price, appeals from a judgment of the Court of Common Pleas of Crawford County sustaining appellee's, A & G Manufacturing Co., Inc.'s, motion for summary judgment, and dismissing the complaint.

Appellant, Dana E. Price, was employed by appellee, A & G Manufacturing Co., Inc, as a laborer primarily engaged in the cleaning and painting of various parts for assembly. On November 23, 1987, appellant began to experience respiratory difficulties resulting in coughing, wheezing and occasional vomiting. Appellant's condition did not improve and on December 14, 1987, he was hospitalized under the care of Dr. W.C. Manthey. Dr. Manthey opined that appellant's condition stemmed from the inhalation of paint fumes in the course of his employment with appellee. Pursuant to this opinion appellant filed a claim with the Bureau of Workers' Compensation.

Glenn Shifley, Sr. (Shifley), Vice President and co-owner of appellee company, arranged an appointment for appellant to be examined by Dr. Michael Boehm (Dr. Boehm). Appellant agreed and was examined by Dr. Boehm on January 25, 1988, at which time Dr. Boehm diagnosed appellant's condition as chronic asthma and concluded that the condition was unrelated to his employment with appellee. Immediately thereafter Shifley and appellant discussed Dr. Boehm's diagnosis. First, Shifley instructed appellant to take the time that he needed to recuperate and that his job would be waiting for him when he was ready to return. Secondly, Shifley advised appellant that asthma was not a compensable injury and that he therefore should withdraw his workers' compensation claim. With the assurance that his job would be waiting for him when he recovered, appellant went home to recuperate.

On February 5, 1988, appellee sent appellant a letter which had been prepared for his signature and was to be sent to the Bureau of Workers' Compensation advising them of his desire to withdraw his claim. Appellant did not act on the letter nor had he contacted appellee since their January 25, 1988, meeting. Subsequently, by letter of February 15, 1988, appellant was notified that though no longer employed by appellee there remained benefits to which he was entitled.

On June 24, 1988, considering himself to have been fired, appellant, along with his spouse, filed a complaint containing three counts against A & G Manufacturing Co., Inc. as defendant. Appellant's first count alleged the commission of an intentional tort, the second count alleged a violation of R.C. 4123.90, and in count three alleged loss of consortium. On July 5, 1988, appellee filed a motion for summary judgment as to count two of appellant's complaint and those parts of count three related to count two. Therein, appellee argued essentially that appellant was not "fired" at all but rather was assumed to have voluntarily quit according to company policy as set forth in the employee handbook. By judgment entry of February 26, 1988, the trial court agreed with appellee and granted summary judgment as to count two and those parts of count three relating to count two, concluding, in pertinent part, that:

"After reviewing all things as required by rule or statute, this Court finds that there is no genuine issue as to any material facts concerning Count II and those portions of Count III which relate to Count II. In the employee's handbook, it is clearly stated that employees who fail to call in for three consecutive days of absence, will be considered to have resigned voluntarily. There is no question in this case here that neither the plaintiff nor his wife did check in since the last day worked which was in January. \*\*\*"

It is from this judgment that appellant appeals submitting one assignment of error which provides as follows:

"THE COMMON PLEAS COURT ERRED BY GRANTING SUMMARY JUDGMENT AGAINST THE PLAINTIFFS."

Initially, we note Loc. R. 7(B) which requires assignments of error to be set forthwith specificity and that appellant's assignment of error is not in conformity therewith. Nonetheless, in the interests of justice, we will consider the matter on its merits.

Additionally, Civ. R. 54(B) provides, in pertinent part, that:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim or third party claim, or when multiple parties are involved, the court

may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. ***"

The trial court's judgment purported to encompass "*** Count II and those portions of Count III which relate to Count II". We conclude that only that portion of the trial court's judgment pertaining to count two constitutes a final appealable order pursuant to Civ. R. 54(B).

Proceeding to the merits of this cause, Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that:

(1) no genuine issue as to any material fact remains to be litigated;

(2) the moving party is entitled to judgment as a matter of law; and

(3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. See *Van Fossen v. Babcock & Wilcox Co* (1988), 36 Ohio St. 3d 100; *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317.

In support, appellant directs our attention to *Caldwell v. Columbus Dev. Center and Dept. of Adm. Serv.* (March 28, 1989), Franklin App. No. 88AP-797, unreported, and *Johnson v. RAWAC Plating Co.* (May 20, 1989), Clark App. No. 2419, unreported. Both of these cases involved situations wherein an employee was discharged after filing a claim for workers' compensation benefits. Though the defendant-employers had offered the company policy as justification for the discharges both appellate courts found that summary judgment was erroneously granted because the record contained sufficient evidence to give rise to a genuine issue of material fact.

Similarly, in the case at bar, appellee argues that appellant was not fired at all but rather was assumed to have voluntarily resigned pursuant to the company policy providing that:

"Employees who fail to call in for three consecutive days of absence will be considered to have resigned voluntarily, and will not be considered for reemployment by the Company."

In viewing the evidence in the light most favorable to appellant the record indicates that appellee assured appellant as follows:

"*** We both know you're sick. *** Just take time off but check in with me. Have you or your wife call here, tell us how you're doing, and when you're ready to come back, let me know, your job's waiting here for you. *** " [Price depo. p. 60, lines 2-7].

In the course of the same conversation appellee advised appellant as follows:

"*** [Y]ou know this is not a workman's comp. claim, that you're going to have to write a letter to workman's comp. telling them." [Shifley depo. p. 60, lines 12-14]

Subsequently, appellee went so far as to draft a letter on appellant's behalf, withdrawing his workers' compensation claim, for him to sign and return to appellee for submission to the Bureau of Workers' Compensation.

Further, relevant to his state of mind, Shifley stated in his deposition as follows:

"Q. You say he was suppose to come in to sign the letter?

"A. He was supposed to come back in a day or two, but I don't know what he told Lori. ***

"Q. Did you make the decision to go ahead and send the letter to him at home?

"A. Yes.

"Q. And were you kind of upset that Dana didn't show up like you say he said he would?

"A. I thought he was trying to put something over on us.

"Q. Kind of make you mad that you were going to have to pay on a workers' comp. claim that you didn't think was valid?

"A. We were going to have to pay either way; but I would assume that's probably a correct statement." [Shifley depo. p. 65, lines 3-17]

Regardless of how characterized by appellee, appellant's employment was terminated at the will of appellee because appellant had no intention of resigning. When viewed in the light most favorable to appellant reasonable minds could conclude that Shifley's assurances to appellant to the effect that his job would be waiting for him upon his return constituted a waiver of the company policy relied upon by appellee. Further, we note that appellee did not consider appellant to have voluntarily resigned after three days of absence without calling in as the policy relied upon dictates. Rather, appellee did not consider appellant to have voluntarily resigned until he had been absent for three weeks without calling in, which also happened to be after appellant failed to sign and return the letter withdrawing his workers' compensa-

tion claim. Lastly, Shifley testified that he thought appellant was trying to put something over on them and that the prospect of paying the workers' compensation claim angered him.

In sum, while the finder of fact may find appellant to have been justifiably discharged, we conclude that in construing the evidence and any inferences to be drawn therefrom in the light most favorable to appellant there remains a genuine issue of material fact as to whether appellant's employment was terminated in violation of R.C. 4123.90. Accordingly, appellant's sole assignment of error is well taken and is sustained.

The judgment of the trial court is reversed and vacated and the cause remanded for further proceedings consistent herewith.

*Judgment reversed and*
*cause remanded.*

SHAW, P.J., and BRYANT, J., concur.